NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Amy FISCHER and Morrison OMORUYI, Individually and on Behalf of All other Persons Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> KMART CORPORATION, <br><br> Defendant. | Civ. No. 13-4116 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

This matter comes before the Court upon two separate motions: (1) the motion of Defendant Kmart Corporation (hereinafter, "Kmart") to Compel Arbitration and Strike the Consents of Plaintiffs Corynn Galliano, Lon Savini, and Kelliann Roselan (hereinafter, the "Opt-In Plaintiffs") to join the present action, (Doc. No. 62); and (2) the motion of Plaintiffs Amy Fischer and others (collectively, "Plaintiffs") for Conditional Certification and Notice, (Doc. No. 55). The Court has issued the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, the Court will grant Defendant Kmart's motion to compel arbitration and strike the consent to join of each of the opt-in plaintiffs, (Doc. No. 62), and the Court will grant Plaintiffs' motion for Conditional Certification and Notice in part and deny the motion in part.

BACKGROUND

The issues before the Court cover the validity and effect of an arbitration agreement between Opt-In Plaintiffs and Kmart as well as the conditional certification of a collective action under the Fair Labor Standards Act.

**A.  The Collective Action**

On July 3, 2013, Plaintiffs Amy Fischer and Morrison Omoruyi filed an action on behalf of former and current Kmart Assistant Store Managers over an "exempt classification" that prevented Kmart Assistant Store Managers from receiving overtime pay.  (Doc. No. 1 at 40; Doc. No. 62 at 7).  On April 30, 2014, Plaintiffs filed a motion for conditional certification and notice, claiming that Kmart's Assistant Store Managers are similarly situated with respect to their exempt status.

Kmart is a mass merchandising company that operates 1,221 stores in 49 states.  (Doc. No. 55 at 2).  All plaintiffs in this matter are current or former Kmart Assistant Store Managers.  (*Id.*).  Kmart labels each Assistant Store Manager as either a "Hardlines" or a "Softlines" Assistant Store Manager.  (*Id.*).  Hardlines Assistant Store Managers deal primarily with items in the electronics, outdoor and home appliances, and hardware sections of the store.  Softlines Assistant Store Managers deal primarily with apparel sections such as clothing and jewelry.  (*Id.*).  Regardless of their classification, both Hardlines and Softlines Assistant Store Managers were subject to the same overtime exemption and were often given generally similar administrative tasks and managerial responsibilities within their respective sections of the store.  (*See* Doc. No. 55, Ex. A, Deposition of Smith at 32-35, 71-83; Doc. No. 55, Ex. B, Deposition of Grabau, at 44-47; *See* Doc. No. 55, Ex. D, Deposition of Flythe, at 122, 251).

**B.   The Arbitration Agreement**

Between March 20, 2014 and April 15, 2014, the Opt-In Plaintiffs, who are also Assistant Store Managers, each filed a consent to join the present action against Kmart.  (Doc. No. 49, 51, 52).  On April 16, 2014, Kmart contacted Opt-In Plaintiffs' counsel, stating that each of the three individuals had previously agreed to arbitrate any employment-related disputes with Kmart and requested that each withdraw his or her Consent to Join forms.  (Doc. No. 62 at 3).  On May 23, 2014, Defendant filed a motion to compel Opt-In Plaintiffs to binding arbitration.  (Doc. No. 61).

1.   *Substance of the Arbitration Agreement*

During the week of April 2, 2012, Kmart introduced the Arbitration Agreement, through which a Kmart associate and Kmart could each agree to submit employment-related disputes to binding arbitration on an individual basis.  (Doc. No. 62, Kaselitz Declaration, at para. 5).

The Arbitration Agreement provided that "all employment-related disputes between Associate and [Kmart] that are not resolved informally shall be resolved by binding Arbitration . . .  This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company."  (*Id*. at para. 6, Ex. A at 1).  It further stated that "**Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration** . . . ."  (*Id*. (emphasis in original)).

The Agreement also stated that it will prohibit the employee and Kmart "**from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action or similar action.**"  (*Id*. (emphasis in original)).

> **Associate and Company agree to bring any dispute in arbitration on an individual basis only . . . this Agreement prohibits Associate and Company from filing, opting into, becoming a class member in, or**

> **recovering through a class action, collective action, representative action or similar proceeding in court.**
>
> **Accordingly, if Associate does not opt out of this Agreement as set forth in Section 11 below:**
>
> **(b) There will be no right or authority for any dispute to be brought, heard, or arbitrated as a collective action**

(*Id*. at 1, 2-3 (emphasis in original)).

    2.   *Process for Acknowledging or Opting Out of the Arbitration Agreement*

Employees are required to access and complete the "Agreement Acknowledgment" section of the Agreement. (*Id*. at paras. 13-14). Employees are able to access and acknowledge the Agreement through an online portal. (Doc. No. 26, Kaselitz Decl., at paras. 7-8). Employees can log in to the online portal with a unique ID and password and view the listed documents. (*Id*. at paras. 9-10).

If the employee clicks the relevant link, the employee is sent to a page which lists "Arbitration Policy/Agreement" and "Opt Out Form Action is required to protect your legal rights to sue the Company in court and/or to participate in any way in a class action, collective action or representative action." (*Id*. at para. 16). Once the employee accesses the Agreement and the Opt Out form, the employee is then asked to acknowledge receipt of the Arbitration/Policy Agreement. (*Id*. at para. 17).

After the employee represents that he or she received the Agreement, a message appears, which states:

> By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form at the end of the Agreement.

(*Id*. at para. 18). The employee must then click "Yes" followed by "Submit." (*Id*. at para. 19).

If an employee does not wish to be bound by the Agreement, he or she must opt out of the Agreement within 30 days and follow the procedure set out in the Agreement.[1]  To effectively opt out, the "Arbitration Policy/Agreement Opt Out Form must be signed, [be] dated[,] include [the] Employee ID number . . . [and be] returned to Sears Holdings Legal Intake . . . within 30 days of Associate's receipt of this Agreement."  (Kaselitz Decl. Ex. A at 6).  The Agreement also provided that "[a]rbitration is not a mandatory condition of Associate's employment at Company, and . . . [a]n Associate who timely opts out . . . will not be subject to any adverse employment action as a consequence of that decision . . . ."  (*Id.* at 6).

Opt-In Plaintiff Galliano acknowledged the Agreement on April 16, 2012.  (Kaselitz at para. 24).  Opt-In Plaintiff Savini acknowledged the Agreement on April 13, 2012.  (*Id.* at para. 25).  Opt-In Plaintiff Roselan acknowledged the Agreement on March 31, 2013.  (*Id.* at para. 26).

DISCUSSION

The Court will first address the operation and validity of the Arbitration Agreement before turning to the question of conditional certification.

I.      **Arbitration Agreement**

A.  *Legal Standard for Arbitration Agreements*

Generally, an arbitration clause found in a contract involving matters of interstate commerce is governed by the Federal Arbitration Act ("FAA").  9 U.S.C. Sect. 2.[2]  Courts have held that

---

[1]      **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement.  Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

Doc. No. 62, Kaselitz Declaration para. 5 (emphasis in original).

[2] The Agreement in this matter also specifically states that the terms of the Agreement are governed by the FAA. (Kaselitz Decl. Ex. A at 2).

"[e]mployment contracts, except those regarding the employment of transportation workers, are within the ambit of the FAA." *Townsend v. Pinnacle Entm't, Inc.*, 457 F.App'x 205, 207 (3d Cir. 2012) (citation omitted); *see Quillon v. Tenet HealthSystems Pa, Inc.*, 673 F.3d 221, 237 (3d Cir. 2012) (holding that district court erred in denying motion to compel collective action that arose under the FLSA); *Williams v. Nabors Drilling USA, LP*, 2014 WL 710078, at *4-6 (W.D. Pa. Feb. 25, 2014).

The FAA favors arbitration agreements and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citations omitted); 9 U.S.C. Sect. 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for revocation of any contract"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Townsend*, 457 F.App'x at 207 (citation omitted).

*B.  Analysis*

In determining whether to compel parties to arbitrate a certain dispute, the court must "engage in a limited review to ensure that the dispute is arbitrable." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1988).  When engaging in this limited review, the court must consider: (1) whether a "valid agreement to arbitrate exists between the parties;" and (2) whether "the specific dispute falls within the substantive scope of that agreement." *Id*.  If a party fails to honor an agreement to arbitrate, the court must compel arbitration. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974).

1.  Is there a valid agreement to arbitrate between the two parties?

 Defendant claims that Opt-In Plaintiffs have waived their right to sue in favor of arbitration by acknowledging and failing to opt out of the Agreement.

"State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *United States v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 1310292, at *5 n. 4 (D.N.J. Mar. 31, 2014). The Opt-In Plaintiffs acknowledged the Agreement in different states: New York, Florida, and Kentucky. The law of each of those states recognizes that a party who acknowledges an agreement and then fails to opt out of that agreement is deemed to have accepted the terms of that agreement. *See Teah v. Macy's Inc.*, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) (granting motion to compel arbitration and finding that plaintiff "not only . . . manifest[ed] his assent by declining to opt out . . . after being informed through multiple channels of his ability to do so, the record also demonstrates that [plaintiff] electronically signed a document at the commencement of his employment stating that he agreed to be bound by the arbitration provision unless he opted out within 30 days"); *Dorward v. Macy's Inc.*, 2011 WL 2893118, at *9-10 (M.D. Fla. July 20, 2011) (granting motion to compel arbitration and holding that a "party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time"); *Household Finance Corp. II v. King*, 2010 WL 3928070, at *2 (Ky. Ct. App. Oct. 8, 2010) (finding an arbitration rider valid and enforceable when the plaintiff failed to object to the rider within the specified time).

The records shows that Opt-In Plaintiffs acknowledged the Agreement and failed to opt out of the Agreement within the specified time.

### a.   *Galliano's Agreement*

Galliano, who worked in a Kentucky Kmart, acknowledged the Arbitration Agreement on April 16, 2012. Under the Agreement, Galliano had to properly complete the Opt-Out Form and send it to Sears Holdings Legal Intake within 30 days of receipt of the Agreement. (Kaselitz

Decl. Ex. A, at 6).  In order to complete the form, she had to include a signature, the date, and her Employee ID number.

A dated and signed opt-out form was discovered in the local file at Galliano's Kmart location.  The form did not include her Employee ID number.  There is also no evidence that the form was actually sent to Sears Holdings Legal Intake, as required by the Agreement.[3]  For the reasons set forth above, the Court finds that Galliano did not opt out and that there is a valid arbitration agreement between Kmart and Galliano.

### b.  *Savini's Agreement*

Savini, who worked at a Florida Kmart, acknowledged the Agreement on April 13, 2012. Though Savini was under the same obligation to opt out of the provision, Plaintiffs supply no evidence to show that Savini opted out of the Arbitration provision.  For the reasons set forth above, the Court finds that there is a valid arbitration agreement between Kmart and Savini. *Dorward*, 2011 WL 2893118, at *9-10 ("party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time").

### c.  *Roselan's Agreement*

Roselan, who worked at a New York Kmart, acknowledged the Agreement on March 31, 2013.  Plaintiffs supply no evidence that Roselan opted out of the Agreement.  For the reasons set forth above, the Court finds that there is a valid arbitration agreement between Kmart and Roselan.  *See Teah v. Macy's Inc.*, 2011 WL 6838151, at *11-13 (E.D.N.Y. Dec. 29, 2011).

2.  <u>Does the dispute fall within the substantive scope of the agreement?</u>

"The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an

---

[3] Kmart represented to the Court that its employees checked fax and mailing records and were unable to locate any evidence that the form was mailed or faxed.

arbitration clause." *Uddin v. Sears, Roebuck & Co.*, 2014 WL 1310292 (D.N.J. Mar. 31, 2014); *Zimmerman,* 783 F.Supp. at 869 ("There is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal citations and quotations omitted).  "[A]mbiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration."  *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.,* 489 U.S. 468, 475 (1989).

Here, Opt-In Plaintiffs do not dispute that the asserted claims fall within the scope of the arbitration clause contained in the Agreement.  The Agreement applies to "all employment-related disputes between [Opt-In Plaintiffs] and Company that are not resolved informally."  Doc. No. 62, Ex. A, Kaselitz Declaration, at para. 6.  Specifically, it "applies, without limitation, to disputes regarding . . . compensation, pay, benefits, breaks and rest periods . . . and claims arising under the . . . Fair Labor Standards Act."  *Id*.  Accordingly, the Arbitration Agreement applies to the present matter.

3.  Enforceability of the Agreement

Opt-In Plaintiffs argue, *inter alia*, that Defendant's motion to compel should nevertheless be denied or stayed pending the ultimate disposition of a matter before the National Labor Relations Board concerning the same arbitration agreement in a different case and/or until after the Court's ruling on Conditional Certification.

In *Kmart Corporation, a Subsidiary of Sears Holdings Corporation v. Daniels*, No. 06-CA-091823 (NLRB Nov. 19, 2013), an administrative law judge found that the same arbitration agreement as the one in this case violated Section 8(a)(1) of the National Labor Relations Act on the grounds that the agreement waived the right to maintain a collective action in all forums and

is applicable to all employees who fail to opt out.  Opt-In Plaintiffs argue that the Court should stay the proceedings pending the final disposition of the *Daniels* case.

A stay "is not a matter of right . . . [i]t is instead an exercise of judicial discretion, the propriety of which is dependent upon the circumstances of the parties."  *Akishev v. Kapustin*, 2014 WL 2608388, at *5 (D.N.J. May 28, 2014).  When determining whether a stay should be issued, courts weigh a number of factors, including: (1) "whether a stay would unduly prejudice or present a clear tactical advantage to the non-moving party;" (2) whether denial of the stay would create "a clear case of hardship or inequity for the moving party;" (3) "whether a stay would simplify the issues and the trial of the case;" and (4) "whether discovery is complete and a trial date has been set."  *Id*. at *3.

Here, Plaintiffs have failed to show sufficient hardship or inequity to justify a stay in this matter.  *Hertz Corp v. Gator Corp*., 250 F.Supp. 2d 421, 424-25 (D.N.J. 2003) (moving party bears the burden of demonstrating a "clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party").  The decision of the ALJ does not have preclusive effect on this court, *Koontz v. U.S. Steel, LLC*, 2002 WL 398817, at *3 (E.D. Pa. Mar. 14, 2002), and it appears that the ALJ's decision conflicts with a ruling recently entered in this district on a similar matter, *Uddin v. Sears, Roebuck & Co.*, 2014 WL 1310292 (D.N.J. Mar. 31, 2014).   Furthermore, a stay of the motion to compel arbitration pending the ultimate disposition of the NLRB proceeding would harm Kmart by forcing it to litigate these claims in court until the *Daniels* matter is decided, effectively negating the potential benefits of the arbitration agreement to the parties and to judicial economy and efficiency.  For the reasons set forth above, the Court will not stay the matter pending the ultimate disposition of the NLRB case.  *Painters' Pension Trust Fund of Washington, D.C. & Vicinity v. Manganaro Corp*, 693 F.

Supp. 1222, 1225 (D.D.C. 1988) (problems associated with inconsistent verdicts "cannot by [them]selves mandate that the court discontinue its proceedings").

Plaintiffs also argue that the motion should be denied because "Kmart's motion to compel arbitration concerns merits issues that are not appropriate prior to the Court's ruling on FLSA Conditional Certification." Doc. No. 77 at 3. Courts in this Circuit have considered arbitration agreements prior to or contemporaneously with conditional certification. *See Williams v. Nabors Drilling USA, LP*, No. 13-1013, 2014 WL 710078, at *9 (W.D. Pa. Feb. 25, 2014) (granting motion to compel prior to conditional certification determination); *Kristic v. J.R. Contracting & Evtl. Consulting*, 2011 WL 1042732, at *1 (D.N.J. Mar. 16, 2011) (considering the motion to compel and conditional certification at the same time).

For the reasons set forth above, the Court will grant Kmart's motion to compel arbitration and will strike the consents of Opt-In Plaintiffs.

## II.      Conditional Certification

The Court will grant the motion for conditional certification in part, but it will deny the motion for conditional certification with respect to Opt-In Plaintiffs.

### A.  *Legal Standard for Conditional Class Certification Under FLSA*

Plaintiffs bring the present action on behalf of themselves and all other Hardlines and Softlines Assistant Managers pursuant to FLSA Section 16(b), which allows civil actions "by one of more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. Sect. 216(b). FLSA collective actions are "unique" in that each plaintiff "desiring to be included in the litigation must 'opt-in' to the suit by filing a written consent with the court." ARTHUR MILLER & MARY KANE, FEDERAL PRACTICE AND PROCEDURE SECTION 1807, 468-69 (3d ed. 2005). Therefore, "[n]o employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. Section 216 (b).

In "opt-in actions, with their . . . accompanying tolling problems, it is of the utmost importance that the decision on class status be made promptly so that the members know whether to accept the 'invitation to come in' or look out for themselves." *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988).  District courts facilitate the notice and joinder process by "conditionally certifying" the lawsuit and enabling other current and former employees to be notified of its existence.  *See Symczyk*, 656 F.3d at 192.

B.  *Analysis*

In determining whether a suit may be tried as a collective action under the FLSA, courts engage in a two-step approach: (1) notice and conditional certification; and (2) final certification or decertification.  *Shakib v. Back Bay Rest. Grp., Inc.*, 2011 WL 5082106, at *2 (D.N.J. Oct. 26, 2011) (internal citations omitted).  At this notice and conditional certification stage, the Court must determine whether the potential members are similarly situated and should be given notice of the action.  *Zanes v. Flagship Resort Dev., LLC*, 2012 WL 589556, at *2 (D.N.J. Feb. 22, 2012).  The "standard applied at this first stage is fairly lenient."  *Ruffin v. Avis Budget Car Rental, LLC*, 2012 WL 2514841, at *3 (D.N.J. June 28, 2012); *Manning v. Goldbelt Falcon, LLC*, 2010 WL 3906735 (D.N.J. Sept. 29, 2010) (burden of showing that collective action members are similarly situated is a "very low hurdle[] to pass").  The Third Circuit requires "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [the plaintiff] and the manner in which it affected other employees."  *Symczyk*, 656 F.3d at 193.  However, "the merits of plaintiffs' claims need not be

evaluated nor discovery completed for such notice to be approved and disseminated." *Krstic v. J.R. Contracting & Envtl. Consulting*, 2010 WL 395953, at *2 (D.N.J. Feb. 4, 2010).

Here, Plaintiffs supplied depositions and corporate documents that tend to show a common policy and classification of Assistant Store Managers, both Hardlines and Softlines, which appears to have a common effect on employees across different Kmart locations.  Kmart also admitted that the Assistant Store Managers were covered by the same overtime exemption regardless of individual factors, such as location and store size.  While different Assistant Store Managers may have different shifts, exercise different levels of authority, and manage different numbers of employees, Plaintiffs have satisfied the lenient standard for a conditional certification for all members except the Opt-In Plaintiffs and any other potential member who is barred by the Arbitration Agreement mentioned above. *See Stallard v. Fifth Third Bank*, 2013 U.S. Dist. LEXIS 186531, at *7 n. 2 (W.D. Pa. Dec. 12, 2013) (focusing on the similarity of the "primary duties" of class members").

Opt-In Plaintiffs consented to an arbitration agreement and a collective action waiver. Therefore, they are both prevented from joining this collective action because of the Agreement and are also not similarly situated to members who can arbitrate in a collective action. *See e.g.*, *Adami v. Cardo Windows, Inc.*, No. 12-2804, 2014 WL 320048, at *9-10 (D.N.J. Jan. 29, 2014) (preventing members who have "signed mandatory arbitration and/or class action waiver agreements" from joining, noting they are not similarly situated since the other plaintiffs had "not signed any such agreement"); *Morangelli v. Chemed Corp*., CIV. 10-0876, slip op, at *8 (E.D.N.Y. June 17, 2010) ("It would be a disservice to judicial efficiency to certify all [employees], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the case.").

Therefore, the Court will grant the motion for conditional certification with respect to current and former Assistant Store Managers who are not bound by the Agreement, and the Court will deny the motion for conditional certification with respect to the current and former Assistant Store Managers, including Opt-In Plaintiffs, who are bound.

III.   **Notice**

Plaintiffs request that the Court issue an order that would compel Kmart to produce "within 21 days:"

> A list, in electronic format, of all persons employed by Defendants as Hardlines and Softlines Assistant Store Managers from July 3, 2010, to the present including: names, addresses, telephone numbers, dates of employment, locations of employment, social security numbers, and work and personal e-mail addresses.

(Doc. No. 55 at 28).  Kmart objects to the provision of email addresses and social security numbers on the grounds that this information is personal and unnecessary.  Plaintiffs do not demonstrate the extent to which the email addresses or social security information would be necessary given the availability of other contact information, such as addresses, phone numbers, and names.  The Court will adopt Plaintiffs' discovery request but will remove the terms "social security numbers" and "work and personal e-mail addresses."

The Court will also order each party to inform the Court as to the form of notice that is most appropriate in this case within 14 days.

14

CONCLUSION

For the reasons set forth above, Kmart's motion to Compel Arbitration and Strike the Consents of Opt-In Plaintiffs is granted and Plaintiffs' motion for Conditional Certification and Notice is granted in part and denied in part.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.